Porter, J.
delivered the opinion of the court. The petitioner alleges that she is one of the heirs of the late John Brady, and as such, became entitled, by an amicable partition of the succession of her deceased father, to a certain piece of land, situated in the parish of St. Jean the Baptiste, containing ten arpents, or thereabouts, with the ordinary depth.
That at the time of said partition, viz. on the 18th day of October, 1805, the petitioner was the wife of John Sassman, and that property before mentioned, was her para *258 phernal, or extra dotal effects. That she has never been divested of her right thereto, by her own consent, or by the authority of justice ; and that, notwithstanding her right to said property, a certain — Aimé, and his wife, have entered into possession, and retain the same, which they have refused to deliver to the petitioner, though often requested so to do.
The petition concludes by a prayer, that the property maybe adjudged to the plaintiff; that the said Aime and wife may pay the annual value of the property, from the time they took possession, until the day of filing the petition.
To this the defendants answered, “ denying all and singular the allegations contained in this petition, and praying to be dismissed with their costs,” &c.
On the issue thus joined, the parties came to trial in the district court ; there was judgment for the plaintiff, and the defendants appealed.
The first evidence introduced, on the part of the plantiff, is the document referred to in the petition. By this act, it is stated in sub *259 stance, that Madame Angelique Westherer, wife of Brady, had appeared before Achille Trouard, judge of the county of German Coast, and declared, that having obtained, by a decree of the court for said county, in the month of Sep. 1805, permission to sell the property of her husband, who had disappeared, she had found it more advantageous to enter into an arrangement with her children, who had a desire to preserve a tract of land belonging to said Brady, and that she had made an agreement with Philip Brady, her son, Auguste Daniel, husband of Marian Brady, and Jean Sassman, who was married to Rosalie Brady, the present plaintiff; that the said land should be partaken between them ; that the negroes, and other property, should be sold, and that arbitrators should be named to estimate the land. The act concludes in the usual form of a notarial instrument. It is dated the 18th of October, 1805. On the same day and year, the said Westherer, wife of Brady, again appears before the judge, and declares, that certain arbitrators, herein named, had made a division of the land of said Brady. This division is recited, and the act assigns to Jean Sassman, in his own right, the *260 two arpents of land for which this suit is brought. This act is signed by Westherer, wife of Brady, her son, Philip Brady, and Sassman, husband to the present plaintiff. Mention is made, that the other knows not how to write, and the judge signs this act in the same manner he did the first.
The next instrument offered was a sale of the land now claimed, dated 20th of January 1808 ; by which it appears, that Sassman sold the land to one Francois Rulle, for $2200. On the 5th of January, 1809, Sassman executed before the judge of the county of German Coast, a receipt, acknowledging that he had been paid by Rulle, the purchase money of said land; and in the same act he discharged the mortgage which he had retained on the premises, for the more perfect assurance of the purchase money of the same.
Several witnesses were examined on the part of the plaintiff, to prove what the premises in dispute would have rented for during the last ten years.
Testimony was taken by the defendants, to prove by parol, the consent of the plaintiff to the alienation of the property for which she now sues. The plaintiff objected to its intro *261 duction. Whether it be at all necessary to decide on this objection, in the present case, will be hereafter considered.
To enable us to understand, correctly, the effect which the evidence first detailed should have on the rights of the parties, recurrence must be had to the pleadings, in order to ascertain what has been alleged and denied, how much it is necessary to prove, and on whom this burthen of proof is thrown.
In the petition it is stated that the plaintiff is the heir of one Philip Brady, deceased; that the land sued for became her’s, by a partition between the heirs of said Brady: she does not allege that she ever was in possession of it; but she asserts that her title to it is good, and that Aime, and wife, illegally keeps possession of it.
The defendants deny all and singular these allegations.
It is a general principle of law, we believe in all countries, as it certainly is in ours, that he, who has the affirmative to maintain, is bound to furnish proof of the fact, which is the foundation of his demand, see Par. 3, 13. The application of this principle to suits for land, has established a maxim, that the plaintiff *262 must recover on the strength of his own title, not the weakness of his adversaries.
In this case, the general denial in the answer put the plaintiff on the proof of her title, and to establish the truth of the allegation contained in the petition, that her ancestor is deceased, and that she, as his heir, has a right to recover the property sued for, she produces an act passed before a notary, which states, that her father had disappeared, and that his children, and heirs, had divided the property which belonged to him. An important question here occurs, whether the plaintiff herself has not produced evidence which prevents her recovering in the present action.
By the laws of this country, at the time the partition already mentioned took place among the heirs of Brady, if an individual disappeared, and no intelligence was had of his fate, he was presumed to live one hundred years, from the date of his birth, unless evidence was furnished to the contrary, by those interested to destroy this presumption, and establish his decease, Febrero addicionado, par. 2, lib. 3, cap. 1, sec. 7, no. 373. Curia Philipica, juicio civil, p. 1, sec. 17, no. 22, and on failure of that evidence, the heirs whom the law would have *263 called to his succession, in case of his death, could only take possession of his property as curators, and be authorised to administer it on giving security, (see authorities cited.) In this case then, the plaintiff, instead of proving that she is the heir of John Brady, deceased, and as such, entitled to the land that once belonged to him, has proved something entirely different, namely, that Brady, her ancestor, is yet alive; for that is the conclusion which the law compels us to draw from facts, such as are here proved before us.
If then the plaintiff ’s father is still alive, or presumed by law to be so, and the plaintiff herself has established the fact which creates that presumption in a suit, wherein she claims property, as his heir, it is impossible she can recover; for she disproves that which is the basis of her demand. The law has pointed out a mode, and an easy and a safe one, by which the presumptive heirs of persons who may have disappeared, can be put in possession of the property they leave behind. This mode the plaintiff and her co-heirs might easily have pursued. In doing so, they would have assured their own rights, and preserved those of the absentee, whose death the law is so far *264 from presuming, that it watches over and protects his property for a number of years, in the hope, and expectation that he may again return. The motives which induced the legislator to thus guard the estate of absent persons, or of those who may have disappeared, are obvious, and this court feels that it is important to society that the law on this subject should be strictly and rigidly inforced.
The question now before the court has been very ably examined, in a case reported in Merlin's Questions de Droit. There the heirs demanded property in right of a person who had been absent, and not heard of for forty years, and they grounded their demand on the presumption, which this length of time created, of his death. It was, however, clearly shown, that not only did the law refuse to lend itself to such doctrine, but, that on the contrary, it presumed the absentee alive, until the period of 100 years elapsed from his birth, and judgment was accordingly given in favour of those who held the property, which the heirs thus claimed.
The principle here involved, was also well considered in the case of Hayes vs. Berwick, decided in the late superior court, 2 Martin, *265 138, a case very similar in its principal features to the present. The plaintiffs claimed a tract of land, right of their ancestor. To establish their title, they proved that their father had left Louisiana twenty years before the inception of the suit, and had not since been heard of. On this evidence the court held, (and we think correctly) that the plaintiffs could not recover, as the law presumed the ancestor still to exist.
In the declaration made by the wife of Brady, before the judge of German Coast, a copy of which is annexed to the plaintiff’s petition, and has been already referred to. She states, “ that having obtained a decree of the court, authorising her to sell her husband’s property, who had disappeared,” she came before him to declare that the heirs intended to partake it amicably, &c. It occurred to the court, as a question necessary to be examined, whether the declaration did not furnish evidence, that the heirs might have been authorised to take the steps they did, in relation to their ancestor’s estate. We are satisfied, however, that it is not legal and sufficient evidence of the fact, that the bare recital of a decree of a court of justice, in a private instrument, and that too, *266 by a person interested in establishing the fact, is not the best evidence, that such a decree was given; a copy of the judgment, not a declaration of the party claiming under it, ought to have been produced.
But the plaintiff insists that the defendants in this suit, have not the right to take advantage of these defects, because she says they claim under the same title she does, and to prove this, refers to the record, where it appears, that Sassman, her husband, sold the premises now claimed, to Francoise Rulle, with whom one of the present defendants, Aimé, was first married. The defendants deny that they rely on this title, or that they set it up in the court below.
On looking into the statement of evidence sent up, we find that it is not stated by whom this document was produced. It follows, in order, the other written testimony offered on the trial by the plaintiff; it precedes the parol proof produced by her, and it is not at all connected on the record with the other evidence of the defendant. This, in itself, creates a strong presumption who introduced it, but a much stronger one arises from the fact, that, without it, the plaintiff would not have *267 produced any proof on a point indispensable in her cause; the identity of the premises claimed: when, to the defendant it was not necessary, because they did not sit up title in their answer. We are bound, therefore, to presume, that this document was offered on the trial by the party who had an interest in doing so.
Taking this for granted, we are of opinion, that, in a case like this, when the defendant pleads the general issue alone, and does not set up title, the plaintiff cannot be relieved from the necessity of proving a legal title in herself, by shewing that the defendant too has a defective one, which emanates from the same source. How can the court tell that this is the only title by which the defendants hold the premises ?
The opinion just delivered, renders it unnecessary to examine if the objection taken to the parol evidence, introduced by the defendant, is well founded or otherwise.
On the whole, we think that the plaintiff has not made out a case which shews that she had a legal title to the premises, and consequently, that the district judge erred in giving judgment against the defendants.
Hennen, for the plaintiff, Mazureau for the defendants.
It is therefore ordered, adjudged, and decreed, that the judgment of the district court, be annulled, avoided and reversed, that there be judgment for the defendants, as in case of a non-suit, and that the plaintiff and appellee pay the cost of this appeal.